Filed 3/14/23  Stone v. U.S. Security Associates CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| ROBERT STONE et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>U.S. SECURITY ASSOCIATES, INC.,<br><br>    Defendant and Respondent. | B318986<br><br>(Los Angeles County<br>Super. Ct. No. BC604257) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge.  Affirmed.

The Dion-Kindem Law Firm, Peter R. Dion-Kindem; The Blanchard Law Group and Lonnie C. Blanchard III for Plaintiffs and Appellants.

Hunton Andrews Kurth, Jason P. Brown, Robert T. Quackenboss, Trevor S. Cox and Cameron L. Davis for Defendant and Respondent.

———————————

Appellants Robert Stone and Abraham Aguayo appeal from a judgment entered in favor of Respondent U.S. Security Associates, Inc. (USSA) granting USSA's separate motions for summary adjudication on the putative class action complaint alleging a single cause of action for a violation of the Fair Credit Reporting Act (FCRA; 15 U.S.C. § 1681 et seq.).  The complaint alleged that USSA violated the FCRA by failing to use a separate disclosure form when it procured a consumer report on Stone, Aguayo, and other putative class members during the employment hiring process.

USSA filed a motion for summary adjudication against Stone on the ground that he had released his FCRA claim against USSA when he settled a separate case against his former employer, Universal Protection Services (UPS), a corporate affiliate of USSA.  On appeal, Stone argues the trial court erred in granting the motion, asserting USSA did not present admissible evidence to prove the requisite corporate relationship between UPS and USSA, as necessary to establish that the release of his claims against UPS also released his claim against USSA.

USSA also filed a motion for summary adjudication against Aguayo on the grounds that he was precluded from serving as a named class representative and his individual and class claims were barred by the statute of limitations and statute of repose governing FCRA claims.  On appeal, Aguayo argues the trial court erred in granting the motion because his claim was timely filed based on (1) a date established by agreement of the parties and prior court

order and (2) the principles of equitable tolling or the relation back doctrine.

As we shall explain, neither Stone's nor Aguayo's arguments have merit. USSA carried its burden on its respective defenses to Stone's and Aguayo's claims. USSA demonstrated it was entitled to judgment as a matter of law, and neither Stone nor Aguayo presented a triable issue of material fact warranting a trial. Thus, the trial court properly granted USSA's motions, and we affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

A USSA is a private security company that operates approximately 160 branches across the country and employs over 50,000 people. USSA presented evidence that in July 2018, it was purchased by another security company, Allied Universal, which was created in 2016 by the merger of two security companies, Allied Barton Security Services and UPS.

In 2013, UPS hired Stone as a security guard and post commander in Los Angeles. He was terminated in early 2014. In February 2014, Stone applied to USSA for a position as a security guard. During the employment hiring process, USSA conducted a background check on Stone and obtained consumer reports on him.

### A. Stone's California Class Actions
#### 1. California Labor Code Claims Against UPS

In February 2015, Stone submitted a demand for arbitration with the American Arbitration Association against UPS (AAA case). Among his claims, Stone alleged violations of California's wage and hour laws, individually and on behalf of other putative class members. Stone sought unpaid wages, compensatory damages, restitution and disgorgement, and legal fees. In December 2018, Stone entered into a settlement agreement to resolve the AAA case claims.

#### 2. Fair Credit Reporting Class Action Against USSA

On December 15, 2015, Stone filed a class action complaint against USSA (now before us) alleging that USSA violated the FCRA because the company failed to use a separate disclosure form when procuring the consumer report on him and other putative class members during their employment hiring process (disclosure claim). Stone sought statutory damages, punitive damages, and attorney fees (Stone's FCRA case). USSA filed an answer to the complaint.

### B. Proceedings in Federal Court

In January 2016, USSA filed a notice of removal of Stone's FCRA case to the United States District Court for the Central District of California. At the parties' request, the district court subsequently transferred the FCRA claim

to the United States District Court for the Northern District of Georgia.

### 1. The Consolidation of Stone's FCRA Class Action with Michael DeCaro's FCRA Class Action

Stone's federal FCRA putative class action was consolidated with another putative class action against USSA filed by Michael DeCaro. DeCaro was a former USSA employee who, on June 3, 2015, filed a putative class action suit against USSA in the United States District Court for the Middle District of Florida.[1] Like Stone, DeCaro had alleged that USSA violated the FCRA by failing to make the required disclosure before procuring a consumer report on him. DeCaro's complaint also contained a second putative class action claim, alleging that USSA fired him in April 2015 based on the information in the consumer report (adverse action claim).

The Georgia district court ordered Stone and DeCaro to file a consolidated complaint. In July 2016, they filed a consolidated complaint that included the disclosure claim and the adverse action claim on behalf of themselves and a nationwide class of plaintiffs as to whom USSA, within five years of the complaint, had procured a consumer report for employment purposes or had taken adverse employment action against based on the information contained in the report (the federal case).

---

[1] In early 2016, DeCaro's case was transferred to the district court in Georgia.

## 2. USSA's Motion to Dismiss

On May 3, 2017, USSA filed a motion to dismiss the consolidated class action claims that arose "more than two years before the filing of Plaintiffs' original complaints." USSA argued that dismissal was appropriate because extending the class to include claims beyond title 15 United States Code section 1681p's (hereafter section 1681p) two-year statute of limitations "would require discovery as to individual issues with respect to the applicability of the discovery rule to each putative class member," thus making a class action "unsustainable." USSA's proposed order granting the motion contained the following proposed language on the dates that commenced the two-year statute of limitation: "the Court hereby dismisses with prejudice any claims that extend beyond two-years from the date the original complaints were filed (beyond June 3, 2015 [the date DeCaro filed his original complaint] for Adverse Action Class claims and December 15, 2015 [the date Stone filed his original complaint] for Improper Disclosure and Authorization Class claims)."

In their response, Stone and DeCaro "agree[d] not to challenge the two-year versus five-year look back period argument Defendant raised in its Motion." Stone and DeCaro stated they "take no issue with limiting both classes in this case [the consolidated action] to two years within the filing of the first-filed complaint (meaning not the consolidated complaint, but the first filed of the two

state court complaints that had been [filed] prior to removal and consolidation) through the present."**2**

A federal magistrate judge prepared a recommendation that recited the parties' respective positions and recommended that the district court judge grant the motion. The district court judge adopted the magistrate judge's recommendation and dismissed "[p]laintiffs' class claims that seek to extend the FCRA statute of limitations to five years." The district court did not rule on whether the date DeCaro filed his original complaint, June 3, 2015, or the date Stone filed his original complaint, December 15, 2015, commenced the running of section 1681p's two-year statute of limitation on the disclosure claims.

### 3. USSA Motion for Summary Judgment

Stone and DeCaro moved for class certification. USSA filed a motion for summary judgment, arguing that the federal courts did not have subject-matter jurisdiction over the disclosure claim. USSA argued Stone and DeCaro lacked standing because they could not show a concrete injury sufficient to warrant the exercise of federal subject matter jurisdiction.

The magistrate judge recommended granting the motion on DeCaro's disclosure claim and denying the

---

**2** Stone's and DeCaro's position on the date of commencement of the two-year statute of limitations was also included in the joint preliminary report and discovery plan.

certification of DeCaro's adverse action class.[3]  The magistrate judge also recommended that Stone's FCRA disclosure claim be remanded to the Los Angeles Superior Court.  On September 25, 2019, the district court judge adopted the magistrate's recommendation, denied Stone's motion to certify the class and remanded Stone's disclosure claim to the Los Angeles Superior Court.[4]

### C.  Resumption of the Original Action (Case No. BC604257) in the Superior Court of Los Angeles County.

After that Stone revived the original complaint, which had been filed in December 2015 with Stone as the sole class representative, in the Superior Court.  In January 2020, the superior court granted USSA leave to supplement its answer to allege the affirmative defense of release.  USSA averred release because in December 2018, while Stone's FCRA case against USSA was pending in district court, he settled his wage and hour claims against UPS.  And as a condition for receiving a "Class

---

[3] After the magistrate judge issued the recommendation, DeCaro moved to amend his claims, but then DeCaro settled with USSA.  The district court judge's order states, the "Court does not address the Magistrate Judge's recommendations about claims that solely relate to or depend on DeCaro and denies the motion to amend as moot."

[4] In describing Stone's disclosure claim, the district court's order acknowledged Stone's original class action suit against USSA was filed in the superior court in December 2015.

Representative Enhancement Payment," in the case against UPS, Stone executed a separate settlement agreement and release in which he agreed to release UPS and "each of its past, present and future . . . related companies/corporations" and "affiliated organizations" from "any and all claims, known and unknown, under federal, state and/or local law." USSA alleged the release in the UPS matter released all claims against USSA, including the claims asserted in Stone's FCRA case, because UPS and USSA were related companies and corporate affiliates.

Stone then filed a motion for leave to file a first amended complaint to add two new named class representatives "so that this action can proceed" without Stone. Stone sought to add Aguayo[5] and Derryck Dawson[6] as named putative class representatives. The motion for leave attached a proposed first amended complaint, including a version of that complaint showing the modifications made from Stone's original complaint filed in December 2015. According to Stone's counsel's declaration supporting the motion to amend, Aguayo was employed around the same time as Stone and, like Stone, could assert

---

[5] In the fall of 2013, Aguayo applied for a security position at USSA and was hired by the company. The proposed first amended complaint alleged that during the hiring process, USSA obtained a consumer report on him.

[6] Dawson is not a party to this appeal.

9

a disclosure claim against USSA.[7]  USSA opposed the motion to amend the original complaint arguing Aguayo could not serve as a class representative or assert an individual disclosure action against USSA because his claims were time-barred.  USSA pointed out that the statute of limitations on Aguayo's disclosure claim commenced in November 2013 and, thus, expired more than two years before Stone filed his original complaint in December 2015.

In its order granting Stone leave to amend, the trial court specifically declined to rule on the statute of limitation issue.  On August 19, 2020, Stone filed the first amended complaint, adding Aguayo and Dawson as class representatives.  Like the original complaint in Stone's FCRA case, the amended complaint alleged only a single claim for violation of the FCRA and alleged that USSA obtained the consumer report on Stone in December 2015.[8]

### 1. Summary Adjudication as to Stone.

USSA filed a motion for summary adjudication on the ground that Stone released his claim against USSA in December 2018 when he settled his claims in the AAA case

---

[7] Although the record before this court does not disclose the date Aguayo discovered the alleged FCRA violation, it is uncontroverted that the FCRA violation occurred on November 5, 2013, the date USSA procured his consumer report.

[8] The amended complaint did not include any factual allegations relating to the newly added named class representatives or incorporate DeCaro's claims.

against UPS and its related corporations and affiliates, which included USSA. Stone opposed the motion, objecting to USSA's evidence and asserting USSA had failed to present admissible evidence that USSA and UPS were under "common control" by Allied Universal. The trial court granted USSA's motion for summary adjudication to Stone, overruling Stone's evidentiary objections.

### 2. Summary Adjudication as to Aguayo.

USSA also filed a motion for summary adjudication and summary judgment as to Aguayo. USSA argued that summary adjudication was proper on Aguayo's individual claim because Aguayo was not a putative class member and could not serve as a class representative based on the two-year statute of limitations and the five-year statute of repose governing the FCRA claims in section 1681p. USSA also asserted Aguayo was judicially and collaterally estopped from expanding the temporal scope of the putative class to include individuals like him, whose FCRA violations occurred more than two years before December 15, 2015—the date Stone filed his FCRA claim in the state court.

Aguayo opposed the motion, arguing his claim was timely because in the federal case, the district court had established that time periods in section 1681p would be measured from June 3, 2015—DeCaro's filing date, not Stone's filing the date. Aguayo also argued that the doctrines of equitable tolling and relation back applied to FCRA's statute of repose, and thus the five-year statute of repose did not bar his claim.

11

The trial court granted USSA's motion for summary adjudication. The court ruled Aguayo was judicially and collaterally estopped from asserting that June 3, 2015, rather than December 15, 2015, was the controlling date to determine the timeliness of the disclosure claim. The trial court found that the district court's order did not clarify which date determined the class period. However, the litigation conduct after remand reflected an acknowledgment that Stone's filing date governed the determination of the class, and Aguayo was estopped from claiming otherwise. The trial court also concluded that the FCRA's five-year statute of repose was not subject to equitable tolling or the relation-back doctrine. Thus, Aguayo's claim was barred by the statute of repose. In rejecting the application of the relation back doctrine, the trial found that Stone's disclosure claim, not DeCaro's disclosure claim, was remanded to the trial court and thus the timeliness of Aguayo's claims would be evaluated using Stone's December 15, 2015, filing date. And based on that date, Aguayo's alleged FCRA violation, which occurred on November 5, 2013, was time-barred. Finally, the trial court found that because Aguayo was not a class member, he could not serve as the class representative.[9]

---

[9] The trial court granted summary adjudication as to Aguayo but denied the USSA's motion for summary judgment. The court ruled that, although it was too late for any additional class representative to be added, the class action could proceed pending the outcome of an arbitration (previously compelled by the trial court) involving USSA and Dawson. However, after

12

On February 16, 2022, the trial court entered judgment for USSA. Stone and Aguayo timely appealed the judgment.

## DISCUSSION

### A.    Standard of Review

A court may grant a motion for summary judgment or summary adjudication "only when 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " (*Husman v. Toyota Motor Credit Corp.* (2017) 12 Cal.App.5th 1168, 1179; *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 582; see Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment has the burden of showing the court that the plaintiff has not established, and cannot reasonably expect to establish, the elements of the cause of action. (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705; accord, *Mattei v. Corporate Management Solutions, Inc.* (2020) 52 Cal.App.5th 116, 122.)

Where, as here, a defendant moves for summary adjudication on a cause of action for which the plaintiff has the burden of proof at trial, the defendant "must present evidence that either 'conclusively negate[s] an element of the plaintiff's cause of action' or 'show[s] that the plaintiff does not possess, and cannot reasonably obtain,' evidence

Dawson's claims were settled in December 2021, the trial court dismissed the claims against USSA with prejudice.

necessary to establish at least one element of the cause of action.  [Citation.]  Only after the defendant carries that initial burden does the burden shift to the plaintiff 'to show that a triable issue of one or more material facts exists as to the cause of action.' " (*Luebke v. Automobile Club of Southern California* (2020) 59 Cal.App.5th 694, 702–703; see Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853–854.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850; accord, *Welborne v. Ryman-Carroll Foundation* (2018) 22 Cal.App.5th 719, 724.)

"We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Mattei v. Corporate Management Solutions, Inc., supra,* 52 Cal.App.5th at p. 122; see *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  "We need not defer to the trial court and are not bound by the reasons for [its] summary judgment ruling; we review the ruling of the trial court, not its rationale." (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 85.)  " 'In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [the plaintiff's] evidentiary submission while strictly scrutinizing [defendant's] own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor.' " (*United Parcel Service*

*Wage & Hour Cases* (2010) 190 Cal.App.4th 1001, 1009; accord, *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 843.)

### B. The Trial Court Properly Granted Summary Adjudication for USSA on Stone's Claim.

USSA based its motion for summary adjudication on Stone's FCRA disclosure claim on the ground that the release Stone executed in December 2018 when he settled his AAA case against UPS barred his claim in this action. As a condition for receiving a "Class Representative Enhancement Payment" in the AAA case, Stone executed a separate settlement agreement and release, agreeing to release "any and all claims, known and unknown, under federal, state and/or local law" against UPS and "each of its past, present and future . . . related companies/corporations" and "affiliated companies" (defined as a company/corporation and/or partnership that is, directly or indirectly, under common control with UPS or any of its parents). The release also included UPS and "affiliated organizations (meaning companies that are less than 50% owned by [UPS] or any of its parents), including . . . [Allied Universal]." USSA argued the release in the AAA case governed the claims in this action because USSA was a corporate affiliate of UPS, and USSA and UPS were under common control of the same corporate parent, Allied Universal.

USSA supported its motion with Stone's discovery responses, the declaration of witnesses, exhibits, including

15

the settlement agreement and release, and various exhibits showing the corporate relationships among USSA, UPS, and Allied Universal. Specifically, USSA submitted the declaration of Matthew Lambach, the associate counsel for Allied Universal. Lambach declared that, as legal counsel at Allied Universal, he had access to the legal and corporate records of Allied Universal and USSA and its related entities. Lambach testified under penalty of perjury that he had personal knowledge of corporate structure and mergers and acquisitions of Allied Universal, USSA, and UPS. He stated that beginning in mid-2018 UPS and USSA were related companies and corporate affiliates under the common control of Allied Universal. Lambach specifically described the mergers of UPS with other entities to form Allied Universal in 2016 and Allied Universal's July 2018 acquisition of USSA. Lambach further testified that exhibits 1 and 2 were true and correct copies of the certificates of merger filed with the Secretary of State of the State of Delaware showing the mergers of the corporate entities (Allied Universal and USSA), and that these documents were maintained in the usual course of Allied Universal's business. Lambach also declared that exhibits 3 through 5 were true and correct copies of tables and an organizational chart showing the corporate ownership and structure of USSA, UPS, and Allied Universal, all maintained in the usual course of business.

In his opposition, Stone conceded he executed the release in the AAA case, and the release was effective and legally valid. Moreover, he did not argue that the settlement agreement was unenforceable or did not cover

the claims asserted in this case. Instead, Stone asserted USSA failed to submit admissible evidence to establish it was under "common control" with UPS. He specifically objected that Lambach lacked personal knowledge of the facts contained in his declaration. Stone asserted that Lambach's statements about Allied Universal's corporate structure were inadmissible legal conclusions. He objected that the exhibits contained hearsay to which no hearsay exception applied. And specifically complained that exhibits 3, 4, and 5 to the Lambach Declaration because they "appear to have been created for purposes of this litigation."

The trial court found that as a matter of law, USSA demonstrated through admissible evidence that it had a complete defense to Stone's FCRA claim based on the release in the AAA case. The court determined Stone failed to raise a triable issue of fact and overruled all of Stone's evidentiary objections to USSA's evidence, concluding that "the Corporations Code and Defendant's corporate ownership structure confirm that [USSA] and [UPS] are owned entirely by Allied Universal and are under common control and are affiliated entities."

Before this court, Stone repeats the arguments he asserted in the trial court and argues the court erred when it overruled his evidentiary objections to Lambach's declaration and the exhibits. He also asserts USSA did not establish it was under common control with UPS as a matter of law.

### 1. The Trial Court Properly Overruled Stone's Evidentiary Objections.

As to the trial court's rulings on the evidentiary objections, a split of authority exists on whether the de novo standard of review or the abuse of discretion review standard applies. (See *Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1451 [acknowledging split in authority and concluding de novo standard of review applied to evidentiary rulings "determined on the papers and based on questions of law such as hearsay"].) The California Supreme Court has not decided whether a trial court's evidentiary rulings on a motion for summary judgment are reviewed de novo or for an abuse of discretion. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 [declining to decide issue].)[10] However, we need not decide which review standard governs because here, under either standard, the trial court did not err.

---

[10] We note that cases considering this question and applying the abuse of discretion standard after *Reid v. Google, Inc.*, *supra*, 50 Cal.4th 512 have been published. by the First Appellate District, Second Appellate District, Third Appellate District, Fourth Appellate District (Division One), Fifth Appellate District, and Sixth Appellate District. (See, e.g., *LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 946; *Schmidt v. Citibank, N.A.* (2018) 28 Cal.App.5th 1109, 1118; *Butte Fire Cases* (2018) 24 Cal.App.5th 1150, 1169; *Duarte v. Pacific Specialty Ins. Co.* (2017) 13 Cal.App.5th 45, 52; *O'Neal v. Stanislaus County Employees' Retirement Assn.* (2017) 8 Cal.App.5th 1184, 1198; *Ryder v. Lightstorm Entertainment, Inc.* (2016) 246 Cal.App.4th 1064, 1072; *Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 951.)

Lambach's declaration established his personal knowledge of the corporate structure and relationships among USSA, UPS, and Allied Universal. The evidence in his declaration also served to authenticate the exhibits and establish the business records exception to the hearsay rule.

First, Lambach established his personal knowledge of the matters set forth in his declaration through his testimony about his role in the company as the associate counsel for Allied Universal. (Evid. Code, § 702, subd. (b) ["witness' personal knowledge of a matter may be shown by any otherwise admissible evidence, including his own testimony"].) In his declaration, Lambach testified that he had access to the legal and corporate records of Allied Universal and USSA and its related entities, and that he had personal knowledge of corporate structure and mergers and acquisitions of Allied Universal, USSA, and UPS. The court was entitled to accept these assertions of personal knowledge. (See *Butte Fire Cases*, *supra*, 24 Cal.App.5th at p. 1169 [holding statements that facts based on personal knowledge of employer's operations are sufficient to satisfy personal knowledge requirement]; cf. *Stuart v. UNUM Life Insurance* (9th Cir. 2000) 217 F.3d 1145, 1154–1155 [reversing determination that declarant lacked personal knowledge where declarant served as company's vice president and former member of human resources].) Neither in the trial court nor here has Stone offered legal or evidentiary support for his assertion that Lambach lacked personal knowledge of his own testimony. (See, e.g., *All Towing Services LLC v. City of Orange* (2013)

19

220 Cal.App.4th 946, 954 [a party "cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact"].)

Second, Lambach averred the exhibits attached to his declaration were true and correct copies of records maintained by Allied Universal in the ordinary course of its business.  The trial court could reasonably conclude that the documents attached to the challenged declarations were sufficiently authenticated and admissible as business records.  (See *People ex rel. Owen v. Media One Direct, LLC* (2013) 213 Cal.App.4th 1480, 1484 [finding authentication adequate where declarant averred that she reviewed files relating to matter and attached documents were true and correct copies of pertinent correspondence]; *Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 322 ["The witness need not have been present at every transaction to establish the business records exception; he or she need only be familiar with the procedures followed"].)  We reach the same conclusion under a de novo standard of review.

Third, Lambach's declaration established that the exhibits attached to the declaration as either non-hearsay or subject to a hearsay exception.  As the trial court properly observed, exhibits 1 and 2 were admissible nonhearsay as official records and official writings.  (See Evid. Code, § 1280.)  Here, the trial court took judicial notice of the Delaware Secretary of State's official stamp on the documents, which it found sufficient independent evidence that the records were prepared in such a manner

20

as to assure their trustworthiness.  We agree, and the court did not err in its treatment of this evidence.

Lambach's declaration also adequately established the foundation for exhibits 3 to 5 as business records within the meaning of Evidence Code section 1271.  Under the business record exception to the hearsay rule, "[e]vidence of a writing made as a record of an act, condition, or event is not made inadmissible by the . . . rule when offered to prove the act, condition, or event if:  [¶]  (a) The writing was made in the regular course of a business;  [¶]  (b) The writing was made at or near the time of the act, condition, or event;  [¶]  (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; [and]  [¶]  (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."  (Evid. Code, § 1271, subds. (a)-(d).)

Lambach stated that exhibits 3, 4, and 5, which depict USSA's corporate family ownership structure, were compiled from information maintained in the usual course of business.  (See *Conservatorship of S.A.* (2018) 25 Cal.App.5th 438, 448 [identification of records as documents "submitted with declaration" is sufficient to satisfy identification requirement of business record exception]; see also *Butte Fire Cases*, *supra*, 24 Cal.App.5th at pp. 1169–1170 [upholding conclusion that documents were business records where declarants testified such were true, correct, and maintained in ordinary course of business].)

The records show USSA's corporate structure as of December 12, 2018, the date on which Stone settled his

21

claim against UPS; according to Lambach, that structure is identical to the corporate structure when the records were prepared (i.e., in March 2020 for exhibits 3 and 4 and in November 2018 for exhibit 5). In addition, given his role in Allied Universal and his familiarity with the various corporate entities' mergers, structure, and relationships, Lambach was qualified to testify about the documents. (See *Conservatorship of S.A.*, *supra*, 25 Cal.App.5th at pp. 447–448 [declaration of administrative assistant concerning medical records was sufficient because business record exception requires only that witness be familiar with preparation procedures].) Stone presented no evidence indicating otherwise. Contrary to Stone's contention, the business record exception has no personal knowledge requirement. (*Unifund CCR, LLC v. Dear* (2015) 243 Cal.App.4th Supp. 1, 8 (*Unifund*) [qualified witness need not be custodian, person who created record, or one with personal knowledge in order for business record to be admissible under hearsay exception].)

Moreover, the criteria for establishing that a document is subject to the business records exception to the hearsay rule may be inferred from the circumstances. (*Unifund CCR, LLC v. Dear*, *supra*, 243 Cal.App.4th Supp. at p. 8 [criteria for establishing that document is subject to business records exception to hearsay rule may be inferred from circumstances].)

In reaching this conclusion, we reject Stone's effort to undermine the application of the business record exception to exhibits 3, 4, and 5, based on his view that the exhibits appear to have been created for purposes of this litigation.

Stone offers no evidence or cognizable argument in support of his view. (See *People ex rel. Owen v. Media One Direct, LLC*, *supra*, 213 Cal.App.4th at p. 1485 [speculative assertion that document was prepared for litigation was insufficient to place document outside business record exception].)

USSA submitted substantial credible evidence that Lambach was a qualified witness with the knowledge and competence to establish the authenticity of such records for the purposes of the business records hearsay exception.[11] Furthermore, Lambach's statements describing Allied Universal's corporate structure are factual assertions, not legal conclusions. Stone did not establish any legal basis to disregard or controvert USSA's evidence.

> **2.  USSA Demonstrated, as a Matter of Law, USSA and UPS Were Affiliated Companies and Under the Common Control of Allied Universal.**

Lastly, Stone argues that USSA failed to establish that it was under common control with Allied Universal as a matter of law. We disagree.

---

[11] If Stone had concerns about the Lambach's personal knowledge and competence, or the trustworthiness of the exhibits, he had an opportunity to challenge and test that evidence before he responded to the motion for summary adjudication. Stone had four months to prepare the opposition to the motion during which he could have sought additional discovery from USSA to test the veracity of Lambach's declaration and the exhibits attached to it.

Although the release does not define the term common control, the Corporations Code provides guidance on common control. In corporate ownership, " 'control' " means the direct or indirect possession "of the power to direct or cause the direction of the management and policies of a corporation." (Corp. Code, § 160, subd. (a).) "[C]ontrol exists even where one entity merely has potential rather than actual influence over another." (*Everhealth Foundation, Inc. v. Department of Health Services* (1985) 168 Cal.App.3d 708, 715.) In addition, a "corporation is an 'affiliate' of, or a corporation is 'affiliated' with, another specified corporation if it directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with the other specified corporation." (Corp. Code, § 150.6.) As used in the release, and considering the circumstances in which it was executed, two business entities are under "common control" when a third entity has the potential or actual authority to direct both their management and policies. Here Lambach's declaration relates that USSA and Universal are under the common control of Allied Universal. In addition to the exhibits, his statements provided the necessary evidentiary support for USSA's argument that it and USP are under Allied Universal's common control for the purpose of the release. Stone submits no alternative meaning of "common control" nor controverts the evidence presented in Lambach's declaration.

In any event, Lambach's declaration established that USSA and Universal are also corporate affiliates, within

the meaning of the release. The trial court also held that Stone's release applied to companies affiliated with UPS. Before this court, Stone has not challenged the court's determination.

Accordingly, given the evidence showing the corporate relationships among USSA, UPS, and Allied Universal, the trial court properly granted summary adjudication for USSA on Stone's FCRA claim.

### C. The Court Properly Granted USSA's Motion for Summary Adjudication on Aguayo's FCRA Claim.

In its motion for summary adjudication on Aguayo's FCRA claim, USSA argued that plaintiffs and their class counsel should be judicially and collaterally estopped from expanding the temporal scope of the putative class to include Aguayo's claim based on parties' agreement in the federal case and the district court order that the putative class on the disclosure claim would include only those individuals whose FCRA violations occurred after December 15, 2013. USSA argued that because Aguayo's FCRA violation occurred on November 5, 2013, he was excluded from the putative class. Alternatively, USSA argued that Aguayo's individual and class claims were barred by the five-year statute of repose in section 1681p because the statute of repose commenced running on his FCRA claim on November 5, 2013, when USSA obtained the consumer report on him, and thus extinguished his FCRA claim in 2018, almost two years before Aguayo was added as a party to this case. For the same reason, USSA

asserted Aguayo could not serve as the name class representative in the action.

Aguayo opposed the motion arguing that neither judicial nor collateral estoppel applied because he was not a part of the federal case and that, in any event, the parties in the federal case agreed, and the district court determined that the disclosure claim would include those individuals whose FCRA violations occurred after June 3, 2013, two years before the date on which DeCaro filed his claim. Aguayo argued that the two-year statute of limitation did not bar his claim because it accrued on November 5, 2013, within two years of when DeCaro filed his action. Aguayo also asserted the five-year statute of repose did not extinguish his claims or preclude him from serving as the named class representative because the statute of repose was equitably tolled as of DeCaro's filing date or because his claim would relate back to the date that DeCaro filed his action.

In granting the motion for summary adjudication, the trial court agreed with USSA's position that Aguayo was barred from asserting the action based on the doctrines of judicial estoppel and collateral estoppel. The court found Aguayo conducted the litigation after remand based on Stone's filing date of December 15, 2015, and could not relitigate the class cutoff date. In addition, the court also found Aguayo's claim (filed almost eight years after the alleged FCRA violation) was barred by the five-year statute of repose in section 1681p. The court further determined the statute of repose precluded Stone from serving as the class representative. The court ruled that neither equitable

26

tolling nor the relation back doctrine applied to statutes of repose and, even if they did, the date to which they would apply was Stone's filing date of December 15, 2015, not DeCaro's filing date. The court found that because only Stone's disclosure claim (and not DeCaro's claim) was remanded to the state court, Stone's filing date governed the timeframes in section 1681p.

Before this court, Aguayo assails the court's order, reasserting the same arguments he made in his opposition to the motion in the trial court. As we explain, the court properly granted summary adjudication for USSA.

### 1. Section 1681p

Section 1681p sets forth the statute of limitation and repose governing claims alleging FCRA violations. The statute establishes that an enforcement action must be brought not later than the earlier of (1) two years " 'after the date of discovery [or constructive discovery] by the plaintiff of the violation that is the basis for such liability' " (*Drew v. Equifax Info. Servs., LLC* (9th Cir. 2012) 690 F.3d 1100, 1109) or (2) five years " 'after the date on which the violation that is the basis for such liability occurs' " (*Drew*, at p. 1109; see, e.g., *Blake v. TransUnion LLC* (E.D.Mich. Jan. 16, 2019, No. 18-10406) 2019 U.S.Dist. Lexis 7371, at *5 [observing § 1681p(1) is a statute of limitations and § 1681p(2) is a statute of repose]). Thus, under the statute's language, in no event may a plaintiff bring an FCRA enforcement action more than five years after the date the violation occurs. A violation occurs when a defendant procures a consumer report for the plaintiff.

(See *Del Toro v. Centene Corp.* (N.D.Cal. Oct. 14, 2020, No. 19-cv-05163-LHK) 2020 U.S.Dist. Lexis 191368, at *10; *Ruiz v. Shamrock Foods Co.* (C.D.Cal. Aug. 22, 2018, 2:17-cv-06017-SVW-AFM) 2018 U.S.Dist. Lexis 148929, at *17, fn. 6.)

### 2. Application of Section 1681p to Aguayo's Claims

It is undisputed that USSA obtained the consumer report on Aguayo on November 5, 2013, and that the alleged FCRA violation occurred on that date. It is also uncontroverted Aguayo was added as a named class plaintiff to this case on August 19, 2020, well beyond the expiration of both the two-year statute of limitations and the five-year statute of repose in section 1681p.

The application of the two-year statute of limitations to Aguayo's individual action and class claim depends on whether the operative date for the limitations period in section 1681p is DeCaro's filing date of June 3, 2015, or Stone's filing date of December 15, 2015. If the operative date is June 3, 2015, the two-year statute of limitations does not bar Aguayo's individual and class claims because the violation occurred on November 5, 2013, less than two years before DeCaro filed his original complaint. (See *American Pipe & Construction Co. v. Utah* (1974) 414 U.S. 538, 550 [timely class action commences action for all members of class]; *Becker v. McMillin Construction Co.* (1991) 226 Cal.App.3d 1493, 1501 [class action tolled statute of limitation on claims of individual homeowners who would have been members of purported class alleging

28

construction defects at residences in home development].) However, if the operative date is Stone's filing date of December 15, 2015, then Aguayo's claims are untimely under section 1681p's two-year statute of limitations.

### a. Stone's December 15, 2015, Filing Date Is the Operative Date for Section 1681p.

Aguayo argues DeCaro's filing date controls the timeliness of the claims based on the parties' agreement in the federal case and the district court's order on the motion to dismiss, which Aguayo asserts established the class cutoff date. USSA disagrees, maintaining the parties and district court adopted Stone's filing date as the cutoff for the class FCRA disclosure claims in the federal case.

On this point, the record in the federal case relating to the motion to dismiss is unclear. As the trial court observed, the record in the federal case discloses that the parties asserted different positions on which filing date should control the disclosure claim. The magistrate judge's recommendation, which the district court judge adopted, explained that plaintiffs advocated for the DeCaro filing date and defendant advocated for the Stone filing date, but the magistrate did not recommend the adoption of one date or the other. Further, nothing in the district court's order designated which of the two filing dates—June 3, 2015, or December 15, 2015—would govern the disclosure claim.[12]

_____

[12] Even the parties' joint preliminary report and discovery plan filed in the federal case does not illuminate the issue—it

29

Likewise, nothing in the consolidated complaint discloses whether DeCaro's filing date or Stone's filing date was meant to govern the application of the two-year statute of limitations on the consolidated disclosure claim.

However, the federal court's subsequent order on the motion for summary judgment, remanding Stone's disclosure claim to the state court, reflects the district court remanded only Stone's disclosure claim to the California State court. When the district court ruled on USSA's motion for summary judgment, DeCaro was no longer a party in the case, because DeCaro settled his claims against USSA while the magistrate judge's ruling on the motion to dismiss was pending review by the district court judge. Further, in the order remanding Stone's disclosure claim, the district court judge referenced Stone's filing date of December 2015, not DeCaro's filing date. Thus, we agree with the trial court's interpretation of the federal court's order as remanding only Stone's disclosure claim (with its original filing date of December 15, 2015) to the California state court.

Moreover, irrespective of which filing date governed the application of statute of limitations on the consolidated complaint's disclosure claim in the federal court, when Stone resumed his case in the superior court, he revived his original state court complaint. After that, when Stone sought to amend his original state court complaint to add Aguayo as the class representative, he did not include any

merely described the position Stone and DeCaro took on the operative date for the claims.

30

reference to DeCaro's disclosure claim, its filing date, or otherwise seek to conform the allegations of disclosure claim in the state court complaint with the disclosure claim in consolidated complaint. Furthermore, when USSA's opposed the motion to amend the complaint, arguing that Stone could not add Aguayo as a named plaintiff because the two-statute of limitations expired on Aguayo's claim, Stone did not assert the DeCaro's filing date governed the disclosure claim in the state court complaint. As the trial court observed in the order granting summary adjudication, before filing the opposition to the motion, Stone and Aguayo conducted this litigation, including requests seeking to discover the identity of additional class members, as if Stone's December 15, 2015, filing date governed claims in the case. Given the record before us, we conclude USSA demonstrated as a matter of law that December 15, 2015 determines the application of the section 1681p two-year statute of limitation.

> ### b. Aguayo's Individual and Class Claims Are Untimely Under Section 1681p.

Because Stone's filing date establishes the two-year statute of limitation timeframe under section 1681p for FCRA violations in this case, we agree with the trial court that Aguayo's individual FCRA claim is time-barred.

In any event, even assuming Aguayo's claim was not time-barred because DeCaro's filing date governed the application of the two-year statute of limitation in section 1681p, we conclude the trial court properly granted the

31

motion for summary adjudication based on the five-year statute of repose in section 1681p.  The statute of repose extinguished Aguayo's claim in November 2018, almost two years before Aguayo was added as a party to this case.  In reaching this conclusion, we reject Aguayo's assertion that equitable tolling and the relation back doctrines would apply to halt the statute of repose.  We join the majority of courts which have determined that absent an express statutory exception, equitable tolling does not apply to a statute of repose.  (See, e.g., *Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.* (June 26, 2017, No. 16-373) __ U.S. __ [137 S.Ct. 2042, 2051] (*CalPERS*) ["Court repeatedly has stated in broad terms that statutes of repose are not subject to equitable tolling"]; *CTS Corp. v. Waldburger* (2014) 573 U.S. 1, 9 ["Statutes of limitations, but not statutes of repose, are subject to equitable tolling"]; *Balam-Chuc v. Mukasey* (9th Cir. 2008) 574 F.3d 1044, 1048 [" 'Statutes of repose are not subject to equitable tolling' "]; *PGA West Residential Assn., Inc. v. Hulven Internat., Inc.* (2017) 14 Cal.App.5th 156, 178 ["[U]nlike a procedural statute of limitations, substantive statutes of repose are generally *not* subject to statutory or equitable tolling"].)

Courts have also refused to apply equitable tolling to the statute of repose in class action cases like this one, where the class action was amended to add a new named class representative after the statute of repose had extinguished the proposed new class representative's claim.  (See *De Vito v. Liquid Holdings Grp., Inc.* (D.N.J. Dec. 31, 2018, Civ. No. 15-6969(KM)(JBC)) 2018 U.S.Dist. Lexis 217963, at *40 [refusing to toll statute of repose to allow

32

plaintiffs to add new named class plaintiff beyond statute of repose period] (*De Vito*); *Leber v. Citigroup 401(k) Plan Inv. Comm.* (S.D.N.Y. 2017) 323 F.R.D. 145,153–154 [time-barred from raising any individual claims at time of entry into case and not yet member of certified class, should not have been permitted to serve as lead plaintiff].)[13]

Similarly, courts have uniformly refused to apply the relation back doctrine to statutes of repose. (See, e.g., *Miguel v. Country Funding Corp.* (9th Cir. 2002) 309 F.3d

---

[13] We observe that none of the cases Aguayo relies upon to support his equitable tolling argument assist him. He cites to *American Pipe & Construction v. Utah*, *supra*, 414 U.S. 538, but its pronouncements about equitable tolling in the context for class action intervenors apply only to statutes of limitation, not to statues of repose. (See *CalPERS*, *supra*, __ U.S. __ [137 S.Ct. at pp. 2052–2053]; *Police & Fire Retirement System v. IndyMac MBS, Inc.* (2nd Cir. 2013) 721 F.3d 95, 106.) Equally unavailing is Aguayo's reliance on *In re Cobalt Int'l Energy, Inc. Secs. Litig.* (S.D.Tex. Aug. 23, 2017, No. CV H-14-3428) 2017 U.S.Dist. Lexis 134495 and *In re SunEdison, Inc. Securities Litigation* (S.D.N.Y. 2019) 329 F.R.D. 124, 145–146 both of which concerned the effect of statutes of repose on class certification. The courts in *Cobalt* and *SunEdison* determined that the statute of repose did not bar class certification, where the class action was timely filed by a named plaintiff, but the class was not certified until after the statute of repose ran on the individual claims of the unnamed class members. (*Cobalt*, at *11–12; *SunEdison*, at pp. 145–146.) This case is different. The application of statutes of repose in the context of class certification of is not at issue here. Instead, this case concerns a party who was added as a named class plaintiff after the statute of repose extinguished the plaintiff's individual claim. Thus, neither *Cobalt* nor *SunEdison* controls the application of statute of repose here.

1161, 1164–1165 [relation-back doctrine did not extend court's jurisdiction beyond statute of repose], disapproved on another ground in *Hoang v. Bank of America, N.A.* (9th Cir. 2018) 910 F.3d 1096; *In re Lehman Bros. Securities* (S.D.N.Y. 2011) 800 F.Supp.2d 477, 483 [relation-back doctrine does not apply to statutes of repose argument]; *Harris v. OSI Financial Services, Inc.* (N.D.Ill. 2009) 595 F.Supp.2d 885, 898 [statutes of repose are not subject to equitable extensions, including the relation-back doctrine]; see also *De Vito*, *supra*, 2018 U.S.Dist. Lexis 217963, at *63 ["[R]elation-back is in tension with the principle that a statute of repose is a rigid and essential limitation on the scope of the cause of action itself"].)

Accordingly, neither equitable tolling nor the relation back doctrine applied, and the five-year statute of repose in section 1681p bars Aguayo's individual FCRA claim.

### c.    Aguayo Cannot Serve as the Named Class Representative.

Finally, because Aguayo's individual claim is untimely under section 1681p, he is also ineligible to serve as the class representative in the case. Generally, a "plaintiff may not maintain an action on behalf of a class against a specific defendant if the plaintiff is unable to assert an individual cause of action against that defendant." (*Haas v. Pittsburgh National Bank* (3rd Cir. 1975) 526 F.2d 1083, 1096, fn. 18.) "Unless at least one named Plaintiff can state a claim for relief under each count Plaintiffs do not have standing to bring claims as

34

part of a putative class action." (*In re Flonase Antitrust Litigation* (E.D.Pa. 2009) 610 F.Supp.2d 409, 413.)

In view of the foregoing, the trial court properly granted summary adjudication for USSA on Aguayo's claims.

## DISPOSITION

The judgment is affirmed. U.S. Security Associates, Inc. is awarded its costs on appeal.

NOT TO BE PUBLISHED.


MOOR, J.


We concur:


BAKER, Acting P. J.


KIM, J.